UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HEARNE,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEX FARHAT, et al.,<br><br>    Defendants. | No. 2:20-cv-0557 DAD DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims he was purposely transferred to a prison where he had documented enemies where he was attacked and injured. Presently before the court is defendants' fully briefed motion for summary judgment and motion to stay the discovery and scheduling order. (ECF Nos. 80, 81.) For the reasons set forth below, the undersigned will grant the motion to stay and recommend that the motion for summary judgment be granted.

## BACKGROUND

**I.    Relevant Procedural History**

Plaintiff initiated this action by filing the original complaint. (ECF No. 1.) The court screened the complaint and gave plaintiff the option to proceed with the complaint as screened or file an amended complaint. (ECF No. 9.) Plaintiff opted to file an amended complaint. (ECF No. 12.) The court screened the first amended complaint and again gave plaintiff the option to proceed with the complaint as screened or to file an amended complaint. (ECF No. 20.) Plaintiff

1

1 then filed a second amended complaint. (ECF Nos. 22, 35.) The court gave plaintiff the option to
2 proceed with the complaint as screened or to file an amended complaint. (ECF No. 37.) Plaintiff
3 elected to proceed with this First and Eighth Amendment claims as screened. (ECF No. 43.)

4       The court ordered service of the complaint on defendants. (ECF No. 45.) Following
5 service, defendants moved to revoke plaintiff's in forma pauperis status. (ECF No. 62.) In
6 response, plaintiff filed a motion to withdraw his request to proceed in forma pauperis. (ECF No.
7 67.) The undersigned recommended that the motion to revoke be granted, and plaintiff be
8 directed to pay the filing fee. (ECF No. 70.) Thereafter, plaintiff paid the filing fee and the
9 district court determined that the motion to revoke was moot. (ECF No. 72.)

10       Defendants filed an answer, and this case was referred to the court's Post-Screening ADR
11 (Alternative Dispute Resolution) Project. (ECF Nos. 73, 74.) Defendants moved to opt out of the
12 Post-Screening ADR Project. (ECF No. 75.) The motion was granted, and the parties proceeded
13 to discovery. (ECF Nos. 77, 78.)

14       Defendants filed the instant motion for summary judgment and motion to stay the
15 discovery and scheduling order. (ECF Nos. 80, 81.) Plaintiff sought and obtained two extensions
16 of time to file an opposition. (ECF Nos. 86, 87, 91, 92.) By order dated December 5, 2022, the
17 court issued a show cause order directing plaintiff to file an opposition to defendants' summary
18 judgment motion within twenty-one days. (ECF No. 94.) Plaintiff has now filed an opposition
19 (ECF No. 96) and defendants filed a reply (ECF No. 98).

20     **II.**    **Allegations in the Second Amended Complaint**

21       Plaintiff claims that the events giving rise to the claim occurred while he was incarcerated
22 at California Health Care Facility ("CHCF") and California State Prison, Sacramento ("CSP-
23 SAC"). (ECF No. 35 at 2.) Plaintiff has named the following defendants: (1) Dr. Alex Farhat,
24 primary health care provider at CHCF; (2) A. Chavez, correctional counselor I ("CCI") at CHCF;
25 (3) A. Frazier, correctional counselor II ("CCII") at CHCF; (4) J. Clough, captain at CSP-SAC;
26 (5) P. Gonzalez, correctional counselor I at CSP-SAC; (6) Morales, processing and placement
27 officer at CSP-SAC. (Id. at 2-4.)
28 ////


Plaintiff alleges that on August 8, 2019, Chavez approached plaintiff in his assigned housing unit. (Id. at 6.) Chavez gave plaintiff notice of his upcoming Institution Classification Committee (ICC) paperwork and stated, "Since you want to keep filing appeals like a wanna-be gangsta and you say you're from the Bay area, I'll send you home; that's Folsom,[1] right?" (Id.)

Plaintiff was summoned to an ICC meeting held without facility Captain A. Vasquez. (Id.) During the meeting plaintiff told CCII Frazier that because he had not received a rules violation report ("RVR") for more than a year he was entitled to a medical override to a lower-level custody facility. In response, Frazier indicated they would send plaintiff to CSP-SAC because staff at CHCF were sick of plaintiff filing administrative grievances regarding staff misconduct. Plaintiff claims they acted maliciously because they knew plaintiff had enemies at CSP-SAC.

Plaintiff further alleges that Dr. Farhat was coerced into removing prescription Americans with Disabilities Act ("ADA") devices from plaintiff's medical classification chrono so that plaintiff could be transferred to CSP-SAC. (Id. at 7.)

Plaintiff alleges that an official ICC meeting was held on August 9, 2019, when plaintiff was away for an outside medical appointment. He alleges this ICC meeting was held without him so that he would not be able to object on the record to a retaliatory transfer. (Id.)

On August 20, 2019, Chavez told plaintiff that he had been endorsed for transfer to CSP-SAC. Chavez stated, " . . . don't act like a punk – now go deal with the enemies you have . . . you should never have made an enemy of me . . . ." (Id.) Immediately after plaintiff learned he would be transferred to CSP-SAC, plaintiff filed several California Department of Corrections and Rehabilitation ("CDCR") form-22s and administrative grievances seeking to stop the transfer. Plaintiff also filed requests with facility captain Vasquez. (Id. at 7-8.)

Plaintiff was transferred and arrived at CSP-SAC on September 3, 2019. (Id. at 8.) Upon his arrival plaintiff sought placement in protective housing. He states officer Morales denied his

---

[1] The court assumes that mention of Folsom refers to CSP-SAC which "was originally called 'New Folsom' and located next to Folsom State Prison." Williams v. Malfi, No. CIV S-08-1737 WBS CMK P, 2010 WL 761095, at *1 n.2 (E.D. Cal. Mar. 4, 2010).

3

1  request in retaliation for grievances plaintiff filed while housed at CSP-SAC between 2014 and
2  2018.  (Id. at 8-9.)
3        On September 10, 2019, a committee hearing was held at CSP-SAC.  (Id. at 10.)  There,
4  captain Clough and Gonzalez approved plaintiff for transfer to facility B at CSP-SAC.  Plaintiff
5  immediately told Clough and Gonzalez that he had enemies on facility B.  On September 12,
6  2019, plaintiff arrived on facility B.  Several hours later he was assaulted by fellow inmates.  As a
7  result, he suffered a broken jaw.
8        Plaintiff states that following the attack he did not receive timely treatment for his injuries.
9  Plaintiff concludes that the defendants conspired to ensure his transfer to a facility where they
10 knew he had enemies.

11 **MOTION TO STAY DISCOVERY AND SCHEDULING ORDER**

12       Defendants filed a motion to stay merits-based discovery and vacate the deadlines in the
13 discovery and scheduling order concurrently with the motion for summary judgment.  (ECF No.
14 81.)  In support of their motion defendants argue that the pending motion for summary judgment,
15 if granted, would dispose of this action in its entirety.  (Id. at 5.)  They further argue that because
16 their motion could resolve this action entirely, staying merits-based discovery and vacating the
17 deadlines set forth in the discovery and scheduling order avoids the expenditure of resources and
18 promotes judicial economy.  (Id. at 6.)  Plaintiff has not filed an opposition to defendants' motion
19 to stay discovery.
20       The court has broad discretion to manage discovery.  Hallet v. Morgan, 296 F.3d 732, 751
21 (9th Cir. 2002).  Federal Rule of Civil Procedure 26(c)(1), the court may, for good cause, issue a
22 protective order or stay of discovery if it determines such order will promote efficiency.  Fed. R.
23 Civ. P. 26(c); Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988).
24       The Ninth Circuit has explicitly recognized that delaying discovery on the merits of
25 plaintiff's claims pending resolution of an exhaustion motion is appropriate.  Albino v. Baca, 747
26 F.3d 1162, 1170-71 (9th Cir. 2014) (en banc) ("Exhaustion should be decided, if feasible, before
27 reaching the merits of a prisoner's claims, and "discovery directed to the merits of the suit"
28 should be left until later.).  Defendants would be entitled to summary judgment on plaintiff's

4

1  claims if the court determines his claim is unexhausted. Id. at 1166. Accordingly, the pending

2  motion has the potential to resolve this action entirely, obviating the need for merits-based

3  discovery. Gibbs v. Carson, No. C-13-0860 THE (PR), 2014 WL 172187, at *3 (N.D. Cal. Jan.

4  15, 2014).

5      In the absence of any actual prejudice to plaintiff and good cause having been shown,

6  defendants' motion to stay discovery pending resolution of his exhaustion motion shall be

7  granted.

## MOTION FOR SUMMARY JUDGMENT

### I. The Parties' Briefing

#### A. Defendants' Motion

Defendants argue they are entitled to summary judgment because plaintiff failed to exhaust any claim against defendants. (ECF No. 80.) Defendants state that plaintiff filed several appeals during the relevant time period but did not submit any appeals or grievances to the highest level of review. (Id. at 10-12.)

#### B. Plaintiff's Opposition

Plaintiff argues exhaustion procedures were unavailable because prison officials could have given him an extension to accommodate his failure to comply with the 30-day statute of limitations. (ECF No. 96 at 6.) He further cites his low TABE score as well as his participation in the Mental Health Services Delivery System at the Correctional Clinical Case Management System ("CCCMS") level of care in support of his argument that exhaustion procedures were unavailable. (Id. at 6.)

#### C. Defendants' Reply

Defendants argue that plaintiff's hospitalizations did not interfere with his ability to file grievances. (ECF No. 98 at 2-4.) They further argue that plaintiff did not appeal the cancellation of an appeal that could have exhausted some of his claims. (Id. at 4.)

### II. Summary Judgment Standards

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

1  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of
2  proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d
3  376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving
4  party may accomplish this by "citing to particular parts of materials in the record, including
5  depositions, documents, electronically stored information, affidavits or declarations, stipulations
6  (including those made for purposes of the motion only), admissions, interrogatory answers, or
7  other materials" or by showing that such materials "do not establish the absence or presence of a
8  genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."
9  Fed. R. Civ. P. 56(c)(1).

10  "Where the non-moving party bears the burden of proof at trial, the moving party need
11 only prove there is an absence of evidence to support the non-moving party's case."  Oracle
12 Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).
13 Indeed, summary judgment should be entered, "after adequate time for discovery and upon
14 motion, against a party who fails to make a showing sufficient to establish the existence of an
15 element essential to that party's case, and on which that party will bear the burden of proof at
16 trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element
17 of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such
18 a circumstance, summary judgment should "be granted so long as whatever is before the district
19 court demonstrates that the standard for the entry of summary judgment, as set forth in Rule
20 56(c), is satisfied."  Id.

21  If the moving party meets its initial responsibility, the burden shifts to the opposing party
22 to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.
23 Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the
24 existence of this factual dispute, the opposing party may not rely upon the allegations or denials
25 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
26 admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.
27 Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a
28 fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record is taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On a motion for summary judgment, it is inappropriate for the court to weigh evidence or resolve competing inferences. "In ruling on a motion for summary judgment, the court must leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' to the jury." Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208, 210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

Generally, when a defendant moves for summary judgment on an affirmative defense on which he bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992). The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment rather than a motion to dismiss. See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). On a motion for summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1172. If the defendant carries that burden, the "burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the

existing and generally available administrative remedies effectively unavailable to him." Id. The ultimate burden of proof remains with the defendant, however. Id. If material facts are disputed, summary judgment should be denied, and the "judge rather than a jury should determine the facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

### III. Material Facts

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a) along with their motion for summary judgment. (ECF No. 80-3.) Plaintiff's filing in opposition to defendants' motion for summary judgment fails to comply with Local Rule 260(b). (See ECF No. 96.) Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." However, in light of plaintiff's pro se status the court has reviewed plaintiff's filing in an effort to discern whether he denies any material fact in defendant's statement of undisputed facts.

The court is mindful of the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition that have evidentiary support in the record will be considered.

At all times relevant to the claim, plaintiff was incarcerated by the CDCR at CHCF and CSP-SAC. (DSUF (ECF No. 80-3) at ¶ 1, 2.) CDCR, CHCF, and CSP-SAC have an administrative appeal process for inmates to appeal any departmental decision, action, policy, omission, or condition that has an adverse material effect on the inmate's welfare. (DSUF (ECF No. 80-3) at ¶ 6.) During the relevant time period, the appeals process, set forth in California

////

1  Code of Regulations, Title 15, §§ 3084.1-3085, had three levels of review. (DSUF (ECF No. 80-
2  3) at ¶ 8.)
3      Defendants have submitted evidence indicating that plaintiff filed 10 appeals and one
4  grievance during the relevant time period. Facts related to each of plaintiff's filings are set forth
5  below.

### A. Appeal 03283

Plaintiff submitted an appeal alleging that he was unable to attend his Unit Classification Committee ("UCC") hearing because he was at a medical appointment. (ECF No. 80-3 at 5 ¶ 16.) The appeal was rejected because it lacked sufficient factual detail regarding the issue being appealed. (Id.) Plaintiff resubmitted the appeal. He alleged that he missed his UCC hearing because he was at a medical appointment and stated he had been endorsed to B yard at CSP-SAC which was improper based on his need for "high risk medical SOP."[2] (Id.) The appeal did not mention defendants' actions or indicate that plaintiff had enemy concerns at CSP-SAC. (Id.) The appeal was rejected again for failure to provide sufficient factual detail or supporting documentation. (Id.)

### B. Appeal 03731

Appeal log number SAC-C-03731 ("03731") related to plaintiff's request for a walker and did not relate to his allegations in this action. (ECF No. 80-3 at 5 ¶ 17.)

### C. Appeal 04129

Appeal log number SAC-H-19-04129 ("04129") contained plaintiff's request that he be transferred to CHCF based on a dentist recommendation and referred to an alleged incident on September 12, 2019,[3] in which his jaw was broken. (ECF No. 80-3 at 6 ¶ 19.) Defendants further allege the appeal was handled as a request for reasonable accommodation under the ADA. (Id.)

---

[2] Pursuant to CDCR form 128-C3, SOP stands for Specialized Outpatient and is a level of care for "[a] high medical risk outpatient with the potential for clinical deterioration, decompensation, morbidity or mortality, who has long term care needs. (ECF No. 80-5 at 21.)

[3] As stated above, the events giving rise to the claim occurred on September 12, 2019, and plaintiff alleges in the operative complaint that as a result of the attack by other inmates his jaw was broken. (ECF No. 35 at 10, 11.)

9

#### D. Appeal 04383

Plaintiff filed appeal log number SAC-T-19-04383 ("04129") requesting to be transferred to California Medical Facility ("CMF"), referencing his jaw fracture, and alleging that "no one was listening to him" during a September 26, 2019, Classification Committee hearing. (ECF No. 80-3 at 6 ¶ 20.) The appeal was cancelled during screening because plaintiff was transferred to CHCF on October 7, 2019, and the issues raised were deemed resolved. (Id.)

#### E. Appeal 03931

Plaintiff filed appeal log number SAC-T-19-03931 ("03931") and it was classified as a transfer appeal. (ECF No. 80-3 at 6 ¶ 21.) Defendants indicate that "[a]fter a diligent search, CSPS, [was] unable to locate a scanned copy of 03931." This appeal appears to concern plaintiff's request to be transferred to a facility for inmates with high-risk medical needs. (Id.)

#### F. Appeal 04532

Plaintiff filed appeal log number CHCF-C-19-04532 ("04532") requesting that he be transferred to CHCF, alleging he was improperly placed in administrative segregation, and requested to be seen by a captain and to convene an ICC proceeding. (ECF No. 80-3 at 6-7 ¶ 22.) This appeal did not reference defendants or plaintiff's allegations in this action. (Id.)

#### G. Appeal 04760

Plaintiff submitted appeal log number CHCF-C-19-04760 ("04760") on November 12, 2019. (ECF No. 80-3 at 7 ¶ 23.) Therein, plaintiff alleged an unnamed physician was refusing to provide adequate pain medication to treat plaintiff's jaw and requested that he be placed on SOP so that he could "go back to Folsom." (Id.) This appeal did not contain allegations of staff misconduct against any named defendant in this action. (Id.)

#### H. Appeal 04860

Plaintiff submitted appeal log number CHCF-C-19-04860 ("04860") as a request for reasonable accommodation under the ADA. (ECF No. 80-3 at 7 ¶ 24.) Plaintiff stated he had been disciplinary free for over a year and requested that he be advised of the institutions where he was eligible to be housed. (Id.) The appeal stated that defendant Chavez sent him to an institution where he was not receiving adequate medical care. However, the appeal did not state

10

that he was transferred to an institution where he had enemy concerns or that he was transferred in retaliation. (Id.)

### I. Appeal 04940

Plaintiff submitted appeal log number CHCF-C-19-04940 ("04940") on November 21, 2019. (ECF No. 80-3 at 7 ¶ 25.) The appeal indicated that Chavez failed to endorse plaintiff properly due to his medical needs and because of his enemy concerns. Plaintiff further stated that he suffered from an assault resulting in a broken jaw that required surgery to repair. (Id.) The appeal was cancelled as untimely pursuant to California Code of Regulations, Title 15, § 3084.6(c)(4) because it was submitted more than thirty days after plaintiff became aware of the issue he was appealing. (ECF No. 80-3 at 8 ¶ 25.)

### J. Appeal 05118

Appeal log number CHCF-C-19-05118 ("05118") was received by CHCF on December 9, 2019, and dated November 21, 2019. (ECF No. 80-3 at 8 ¶ 26.) The appeal stated plaintiff received a classification committee chrono on November 19, 2019, and indicating he sent a CDCR form 22 to CCII Howard on that date. Plaintiff requested a behavior override to a level three SOP facility. The appeal was rejected pursuant to California Code of Regulations, Title 15, § 3084.6(c)(4) because it was premature. (Id.)

### K. Grievance Log Number 74294

Grievance log number 74294 was received by CHCF on January 4, 2021. (ECF No. 80-3 at 8 ¶ 28.) The grievance concerned plaintiff's request to be transferred to Mule Creek State Prison due to his enemy concerns at both California State Prison, Los Angeles County and CSP-SAC. The grievance noted that plaintiff currently had a § 1983 action pending "'against those at CHCF and CSPS' for placing him in danger with a known enemy." (Id.) The grievance did not specifically reference any defendant in this action. The grievance was rejected as premature because it concerned an anticipated action or decision.

///

////

////

## IV. Discussion

### A. Legal Standards – Exhaustion of Administrative Remedies

#### 1. PLRA Exhaustion Requirement

Because plaintiff is a prisoner challenging the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . . or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Regardless of the relief sought, a prisoner must purse an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prison need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in original) (citing Booth v. Churner, 532 U.S. 731, 736 (2001)).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets in original). In discussing availability in Ross the Supreme Court identified three circumstances in which administrative remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it;" and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 643-44. "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Id. at 639.

"[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id.

"[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007). It is the defendant's burden "to prove that there was an available administrative remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). The burden then "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies unavailable to him." Id.

A prisoner is required to exhaust administrative remedies before filing suit. McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam). Section 1997e(a) mandates that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted. 42 U.S.C. § 1997e(a). "The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained." Booth, 532 U.S. at 738. "Exhaustion subsequent to the filing of suit will not suffice." McKinney, 311 F.3d at 1199.

### 2. California's Inmate Appeal Process

"The California prison system's requirements 'define the boundaries of proper exhaustion." Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S. at 218). California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). During the time relevant to this action,[4] inmates in California proceeded through three levels of appeals to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the CDCR. Cal. Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a

---

[4] In 2020, California changed the grievance system from a three-tier system to a two-tier system. The change became effective on June 1, 2020, after plaintiff initiated the relevant appeals in the present case. See Cal. Code Regs. tit. 15, § 3480. All citations to the California code in the text refer to the prior law.

1 prisoner's administrative remedies. See id., § 3084.7(d)(3). However, a cancellation or rejection
2 decision does not exhaust administrative remedies. Id., § 3084.1(b).

3       A California prisoner is required to submit an inmate appeal at the appropriate level and
4 proceed to the highest level of review available to him. Butler v. Adams, 397 F.3d 1181, 1183
5 (9th Cir. 2005); Bennet v. King, 293 F.3d 1096, 1098 (9th Cir. 2002). In submitting a grievance,
6 an inmate is required to "list all staff members involved and shall describe their involvement in
7 the issue." Cal. Code Regs. tit. 15, § 3084.2(3). Further, the inmate must "state all facts known
8 and available to him/her regarding the issue being appealed at the time," and they must "describe
9 the specific issue under appeal and the relief requested." Id. § 3084.6(b)(8).

10       An inmate has thirty calendar days to submit their grievance from the occurrence of the
11 event or decision being appealed, or "upon first having knowledge of the action or decision being
12 appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

13       **B. Analysis**

14       Defendants argue that they are entitled to summary judgment because none of the appeals
15 submitted by plaintiff during the relevant time period were submitted to the highest level for
16 review. (ECF No. 80-2 at 13.) They further argue that during the relevant time period
17 administrative remedies were available to plaintiff. (Id.)

18       In the opposition, plaintiff argues that he filed appeals after the thirty-day time period, and
19 they were improperly screened out. (ECF No. 96.) He specifically cites appeal number 04940[5]
20 and argues that prison officials could have accommodated an extension of the thirty-day time
21 period. (ECF No. 96 at 6.) The Ninth Circuit has recognized an exception to the exhaustion
22 requirement when a prisoner's attempts to exhaust his administrative remedies are "thwarted by
23 improper screening." Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). To meet this
24 exception, the prisoner must show (1) that he actually filed a grievance which would have
25 sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials

---

[5] As set forth above, appeal number 04940 alleged that defendant Chavez improperly transferred plaintiff to CSP-SAC, where plaintiff had enemies and as a result plaintiff was attacked suffering a broken jaw requiring surgical repair. (ECF No. 80-3 at 7.)

14

1   screened his grievances for reasons inconsistent with or unsupported by applicable regulations.
2   See id. at 823-24.

3   Defendants have put forth evidence indicating that appeal number 04940 was properly
4   rejected as untimely pursuant to California Code of Regulations, Title 15, § 3084.6(c)(4) because
5   it was submitted more than thirty days after the incident.  Plaintiff does not dispute that this
6   grievance was filed after expiration of the thirty-day statute of limitations and thus it cannot
7   satisfy the PLRA's exhaustion requirement.  See Woodford v. Ngo, 548 U.S. 81, 84 (2006) (an
8   untimely appeal is not sufficient to satisfy the exhaustion requirement).  Further, plaintiff could
9   have, but did not appeal the rejection.  Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("If
10  their initial grievance is denied, prisoner must file a timely appeal."); Ranson v. Aquirre, No.
11  1:12-cv-1343 AWI DLB (PC), 2013 WL 5923104, at *7 (E.D. Cal. Nov. 1, 2013) (a cancelled
12  grievance does not exhaust administrative remedies because a separate appeal could have been
13  filed on the cancellation decision).

14  Plaintiff argues that he should have been given additional time because he is a participant
15  in the Mental Health Systems Delivery Service at the Enhanced Outpatient level of care, he has a
16  TABE score of 2.1, and he was hospitalized relative to injuries incurred during the September 12,
17  2019, attack.  (ECF No. 96 at 6.)  Neither plaintiff's participation in the MHSDS or his TABE
18  score are sufficient to show administrative remedies were unavailable to him because the
19  Supreme Court specifically prohibits discretionary "judge-made exceptions" to the exhaustion
20  requirement.  Ross, 578 U.S. at 637.

21  Additionally, defendants have put forth evidence indicating that plaintiff returned to CSP-
22  SAC on September 15, 2019, and filed at least one appeal during the relevant thirty-day time
23  period.  (ECF No. 80-3 at 6; ECF No. 80-4 at 30, 36; ECF No. 98 at 2-3.)  Thus, his brief
24  hospitalization did not prevent him from filing an appeal in the thirty-day period following the
25  September 12, 2019, attack.

26  In order to exhaust, an inmate is required to obtain a decision at each level of review.
27  Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b);
28  Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)).  The undisputed evidence put forth

15

indicates that plaintiff did not submit any appeal related to his claims in this action to the highest level of review. Thus, his claims are unexhausted and should be dismissed.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that defendants' motion to stay discovery (ECF No. 81) is granted.

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 80) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judges Findings and Recommendations." Any reply to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 20, 2023

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil Rights/S/hear0557.msj fr